*R. Choate & H. C. Hutchins,* for the plaintiffs.

## E. CARVER COMPANY *vs.* MANUFACTURERS' INSURANCE COMPANY.

An open policy of insurance on goods " lost or not lost, on board of any steamer or steamers, at and from New York to New Orleans; all sums placed at risk under this policy are to be indorsed thereon;" covers goods within the amount insured, shipped at New York on board a steamer bound for New Orleans, and intended in good faith by the assured to be covered by the policy, but lost by a peril insured against, and the loss known to the assured, before the assured, acting with reasonable diligence, has notified the office of his intent; although the insurers, upon receiving such notice, refuse to indorse the risk.

The treasurer of a manufacturing corporation has no authority to release a claim for a loss under a policy of insurance obtained by him in behalf of the corporation.

Under an open policy on goods, which requires " all sums placed at risk under this policy to be indorsed thereon," a claim for a loss of goods, for which the insurers, though they have refused so to indorse it, are liable, is not necessarily waived, after an abandonment of the goods to the insurers, and negotiations for a settlement of the claim, and bringing a suit thereon, by an indorsement on the policy, at the request of the assured, of other risks, which would of themselves almost exhaust the policy, and the receiving back, by the assured, of the premium for the balance.

ACTION OF CONTRACT on a policy of insurance, dated June 14th 1853, whereby the defendants caused " the E. Carver Com-

pany to be insured, lost or not lost, twenty five thousand dollars on cotton gins and bandings on board of any steamer or steamers, at and from New York to New Orleans. All sums placed at risk under this policy are to be indorsed thereon, and this policy is to be closed in twelve months, if not sooner filled. Gins and bandings valued at $250.00 each, including premium." The indorsements on the policy are copied in the margin.* Trial before *Thomas,* J., who reported the case to the full court. The substance of the report, and so much of the evidence as is material to the understanding of the points of law decided, are stated in their opinion.

*R. Choate & H. F. Durant,* for the plaintiffs.

*R. Fletcher & C. A. Welch,* for the defendants.

THOMAS, J.† This case comes before us upon a report of the pleadings, and of the evidence in the cause, oral and documentary, with an agreement of parties that if, upon all the facts in the case, and the inferences properly to be drawn from them, the jury, under proper instructions from the court, would have been warranted in returning a verdict for the plaintiffs, judgment should be rendered for them ; otherwise, judgment to be rendered for the defendants. That is to say, if a verdict, rendered upon the pleadings and evidence reported, would not have

| * Date. | Amount. | Rate. | | | | | | Vessels. |
|---|---|---|---|---|---|---|---|---|
| June 14 | $3.500 | 1 | 14 | Gins and bandings on board | Steamer | Empire City |
| 25 | 4.750 | 1 | 19 | " | " | " | Cherokee |
| July 15 | 4.250 | 1 | 17 | " | " | " | Empire City |
| 29 | 4.750 | 1 | 19 | " | " | " | Cherokee |
| Aug. 13 | 2.800 | 1 | 14 | " | " | " | Empire City, Valued at $200.00. |
| 31 | 2.500 | 1 | 10 | " | " | " | Eldorado |
| Sep. 10 | 2.000 | 1 | 8 | " | " | " | Crescent City |
| | 450 | | Short Property | | | | |
| $25.000 | | | | | | | |

Boston, February 22d 1854. Rec[d] of the Manufacturers' Ins. Co. Four & 50-100 dollars return premium agreeably to contract under this policy.

$4.50. Caleb Reed, Treas.

BIGELOW J. did not sit in this case.

been set aside by the court as against law or evidence, the plaintiffs should have judgment.

No question is made as to the loss of the property. The questions raised are : 1st. Whether the defendants were ever liable for the loss ; 2d. If so, whether the claim of the plaintiffs had been released and discharged by them.

The policy, which bears date June 14th 1853, causes "the E. Carver Company to be insured, lost or not lost, twenty five thousand dollars on cotton gins and bandings on board of any steamer or steamers at and from New York to New Orleans. All sums placed at risk under this policy are to be indorsed hereon, and this policy is to be closed in twelve months if not sooner filled."

The sixteen gins, for the loss of which this action was brought, were shipped on board the Steamer Cherokee, (a steamer belonging to the United States Mail Steamship Company,) at New York, on the 25th and 26th of August 1853. The bill of lading bears date the 26th, and was received by the agent of the plaintiffs at Boston on the morning of the 27th. The steamer was burned on the evening of the 26th, and the gins destroyed. About one o'clock of the afternoon of the 27th, the agent of the plaintiffs, Caleb Reed, went to the defendants' office and requested them to indorse the shipment of the sixteen gins on the policy. The secretary of the office refused to indorse the shipment, because the property had been lost. On the 29th, the plaintiffs gave notice to the defendants that they should look to the office for the loss, and duly abandoned the property.

The defendants say, in substance and effect, that the indorsement of the shipment on the policy was a condition precedent to their liability ; that the indorsement never having been made, the property was never at their risk.

The first question that presents itself is, In whom was the right of electing what shipments, coming within the terms of the policy, were to be indorsed upon it ? This shipment came within the terms and time of the policy, and was in a steamer, shipments in which had before been indorsed upon the policy.

The character of the property to be insured is fixed, the rate of premium fixed, and the amount paid. The shipments are to be made in any steamer from New York to New Orleans. To say then that the defendants had the right to elect, in every case, whether they would indorse or not a shipment which was within the description of the policy, is to give no effect to the contract, to enable the defendants wholly to avoid the obligation they have assumed. It enables them to say, Having received the price for insuring twenty five thousand dollars on any gins to be shipped in any steamer from New York to New Orleans within a year, we will insure such shipments as it is our pleasure to insure, and no other and no more.

Such a construction of the contract obviously defeats it. We think it is not the true construction; but that the just and reasonable view of the contract is, that the plaintiffs, having paid their premium for insurance to a fixed amount, within a fixed term of time, on any gins to be shipped by any steamer between the ports named, had the right (under the limitations hereafter stated) to elect upon which of the shipments made they would apply the insurance stipulated for; and that it was the duty, as well as the right of the defendants to indorse such risks upon the policy; and, if this be so, that the defendants cannot escape from their responsibility by a refusal to indorse a shipment which the plaintiffs reasonably request them to indorse.

The ground of refusal to indorse was, that the property had already been lost. But the policy was to cause the plaintiffs to be insured on gins, "lost or not lost." And while, on the one hand, it is certainly plain that the plaintiffs cannot, as to any shipments made by them and coming within the conditions of the policy, wait until they hear that the steamer is either lost or in peril, it seems to be equally clear that if the party, intending in good faith to have the shipment covered by the policy, notifies the insurer of his election seasonably, the insurer cannot refuse because he has in the mean time, that is between the shipment and notification, heard of a disaster to the steamer or loss of the goods. There must be, of course, entire good

faith in the proceeding; for in this, as in many other cases, the insurer confides in the good faith of the assured.

When the election of the plaintiff is notified to the office, the insurance takes effect from the shipment, and covers the goods, lost or not lost.

There are obvious reasons for requiring the notice to be given and the indorsement to be made; to identify the property insured; to know what was at risk, that they might protect it; to ascertain when the policy was exhausted; and as evidence of sums at risk and premium earned.

Such seems to us the reasonable construction of the contract, a contract to be liberally construed, to be carried out in its obvious spirit and purpose and in perfect good faith; and such seems to be the result of the authorities. We do not know that a case precisely similar in its facts has been decided. In principle, it is like the case of a policy on goods by a ship or ships thereafter to be declared, in which the voyage is described, and, generally, the time within which the ships are to sail. In those cases it is left to the assured to declare the subject to which the policy is to be applied, and he may declare it even after the loss has taken place.

If he were required to declare before the loss, or lose the benefit of the contract, the policy would frequently be ineffectual; since this form of insurance is adopted when no more particular description can be made; and it often happens that the intelligence of the loss is received as early as the information by which the assured would be able to make a declaration of his interest. From the necessity of the case, therefore, he must be permitted to declare his interest after he receives news of the loss. Such is the statement of the doctrine by Mr. Phillips. 1 Phil. Ins. § 438. See also *Kewly* v. *Ryan*, 2 H. Bl. 343; *Craufurd* v. *Hunter*, 8 T. R. 16, *note; Harman* v. *Kingston*, 3 Campb. 150. The declaration of the ship before the loss is not a condition precedent to the recovery. 1 Arnould on Ins. 175–177. See also Emerigon, *c.* 6, § 5.

In the case at bar, the same necessity existed. The news of the loss of the steamer was before the receipt of the bill of

lading. The plaintiffs could not give notice of the shipment and request the indorsement before the loss.

The reasonableness of this construction of the policy is made apparent from another consideration. It is this; if the insurance could in no case take effect, till the indorsement was formally made, it is clear that, for a portion of the time, at New York, or perhaps even upon the voyage, the plaintiffs must be without insurance; that is, from the time the goods were on board till the plaintiffs received notice of the shipment, and notified the office and had the indorsement made.

We are of opinion, upon the evidence, that the plaintiffs, within a reasonable time and in good faith, notified the defendants of the shipment, and requested the indorsement to be made; that it was the duty of the defendants, even though they had received notice of the burning of the steamer, to make it; and that they cannot avail themselves of such omission of duty to throw the loss upon the plaintiffs.

A suggestion was made at the argument, though not pressed, which we believe was not made at the trial, that the remedy, if any, of the plaintiffs, was in another form. We have not thought it necessary to consider this question, because it is obvious that, under any form, the measure of damages would be the same, and because, where all the facts are thus agreed by the parties, an amendment would be readily allowed, if necessary for the purposes of justice.

The second question is, whether, supposing the plaintiffs to have had a valid claim for the loss of the gins, such claim has been released and discharged. That is, whether the jury must have found, upon these facts, that the claim had been released.

The facts show that the plaintiffs intended to rely upon this claim, and notified the company that, having taken legal advice, such was their purpose; that they formally abandoned the gins to the insurers; that negotiations were had at different times, with a view to some adjustment, in which the plaintiffs insisted upon their rights; that such negotiations for settlement failed, and that a suit was thereupon brought; that the plaintiffs'

claim, if valid, was a valuable one, and no consideration for its abandonment has been proved or suggested; that the plaintiffs did not intend to abandon the claim; and that Caleb Reed, by whom the receipt was given, had no express authority to compromise or abandon the claim. That such authority did not result from his office as treasurer of the E. Carver Company is settled in *Dedham Institution for Savings* v. *Slack*, 6 Cush. 408.

The defendants say that the making of subsequent indorsements of other shipments, at the request of the plaintiffs, was in itself a waiver of any claim for this shipment; inasmuch as the amount covered by the indorsements, including those of August 31st and September 10th, excluding the sixteen gins in controversy, would exhaust the policy, excepting the small amount of four dollars and a half.

If the loss of the sixteen gins was one for which the defendants were responsible, it was, of course, the same thing as if the shipment had been indorsed upon the policy. The right to the amount of the loss was in the plaintiffs.

Looking at the indorsement of August 31st, only two days after notice of the abandonment and claim for loss, and, in connection with it, at the subsequent negotiations of the parties, it is quite clear that it was not intended by Reed as a waiver or release of the previous loss, if he had authority to waive or release it. It would seem more probable that it was the result of mistake or oversight. It does not, in and of itself, operate as a waiver; the most that can be said is, that it was evidence of an intent to waive.

The argument assumes that the subsequent indorsements effected a valid insurance, and that the defendants would have been necessarily liable for the losses of these shipments. .

Possibly, if the insurers made intentionally, with knowledge of the facts, indorsements exceeding the amount fixed in the policy, they might be liable for the loss; the insured being liable also for additional premium. But if the defendants were liable for the sixteen gins, and the subsequent indorsements were made by mistake or inadvertence, upon a policy already exhausted, the defendants would not be liable for such losses. It

is assuming the question to say that the defendants would be necessarily liable on the subsequent indorsements, and therefore were not liable for this loss. It is as easy to say, If they were liable for the sixteen gins, they were not liable for the subsequent losses.

Unfortunately both the parties to the subsequent indorsements are deceased, and we cannot know precisely with what understanding those indorsements were made. But we think the jury would not have found that the agent meant by such indorsements to abandon a valid claim for four thousand dollars.

It was, after all, a question of intent; and, taking the whole evidence, the jury would have been well warranted in saying the plaintiffs did not intend to release or waive their claim.

The same considerations apply, with increased force, to the receipt of the small balance of four dollars and fifty cents.

Upon the whole evidence, under the agreement, we think judgment must be entered for the plaintiffs.